# ATTACHMENT A

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
EDGARTOWN DIVISION

GRIGOR B. HRISTOZOV and

KAROLINA M. HRISTOVA,

individually and on behalf of
all others similarly situated

*Plaintiffs*

v.

SEAFOOD SHANTY RESTAURANT
MANAGEMENT, INC.,

FRANK J. PELLEGRINO, and

DENISE PAGE

*Defendants*

Civil Action No.

1974 CV 00037

## CLASS ACTION COMPLAINT

### SUMMARY

This is a class action arising from the Defendants' routine nonpayment of wages,

failure to pay minimum wage, and further violation of multiple state and federal employee-

rights statutes.

Clear examples of Defendants' violations are shown in Exhibits B-E. Defendants have

routinely and consistently a) taken hours off Plaintiffs' paychecks, without explanation or

justification; b) paid Plaintiffs less than minimum wage, by misclassifying them as tipped

Page 1 of 29

employees and illegally applying a tip credit; c) failed to give appropriate breaks, and threatened to retaliate against Plaintiffs for taking breaks; d) failed to post required workplace notices apprising Plaintiffs of their rights; e) breached their contract with Plaintiffs; and f) violated other rights of Plaintiffs under state and federal law.

Plaintiffs seek damages under various bases including the Massachusetts Wage Act, the Fair Labor Standards Act ("FLSA"), and contract law theories. Plaintiffs also seek appropriate multiple damages and attorneys fees for these violations. Because Defendants have never notified Plaintiffs of their rights under state and federal law (either through the required labor law posters or otherwise) the Plaintiffs also ask the court to toll the statute of limitations for claims under the Massachusetts Wage Act (normally a three-year limitations period) and claims under the FLSA (normally a two-year limitations period).

Plaintiffs also seek to certify a class of all non-salaried employees of Defendants for the previous six years. The facts herein easily support the requirements for class certification.

## PARTIES

1.    Plaintiff Grigor B. Hristozov ("Hristozov") is an individual currently living in Vineyard Haven, Massachusetts, with a permanent residence in Plovdiv, Bulgaria. He brings suit for himself and for the class of all other employees similarly situated.

2.    Plaintiff Karolina M. Hristova ("Hristova") is an individual currently living in Vineyard Haven, Massachusetts, with a permanent residence in Plovdiv, Bulgaria. She brings suit for herself and for the class of all other employees similarly situated.

Page 2 of 29

3. Defendant Seafood Shanty Restaurant Management, Inc. ("SSRMI") is a Massachusetts corporation with a principal business address of 25 Line Drive., West Tisbury, MA 02575. The most recent Annual Report for SSRMI is attached as **EXHIBIT A: SSRMI 2018 Annual Report.**

4. Defendant Frank J. Pellegrino ("Pellegrino") is an individual with an address of 3 Thaxter Lane, Edgartown, MA 02539. Pellegrino is the President of SSRMI and has been President of SSRMI for at least six years prior to the date of filing of this complaint.

5. Defendant Denise Page ("Page") is an individual with an address of 25 Line Drive., West Tisbury, MA 02575. Page is the Treasurer of SSRMI and has been Treasurer of SSRMI for at least six years prior to the date of filing of this complaint.

## JURISDICTION

6. This case is properly filed in the courts of Dukes County because the damages to Plaintiffs occurred in Dukes County; because the corporate defendant has a principal place of business in Dukes County; and because the individual defendants reside in Dukes County.

7. The case is properly filed in the Dukes County Superior Court because it is a class action, and because the aggregate matter in controversy on a class basis is well in excess of $25,000.

Page 3 of 29

8.      The defendants are proper. SSRMI operates the restaurants and issues the paychecks,

        and as the President and Treasurer of SSRMI, Pellegrino and Page bear explicit

        personal liability under the Massachusetts Wage Act. *See* Mass. Gen. Laws 149, §148

        ("The president and treasurer of a corporation and any officers or agents having the

        management of such corporation shall be deemed to be the employers of the

        employees of the corporation within the meaning of this section.") Pellegrino and

        Page also bear equivalent liability under federal law for FLSA violations. *See* 29 U.S.

        Code §203(d): ("'Employer' includes any person acting directly or indirectly in the

        interest of an employer in relation to an employee.)

## FACTS

**Information regarding Defendants' restaurants.**

9.      SSRMI operates a restaurant complex in Edgartown, Massachusetts, located at #29

        and #31 Dock St., Edgartown, Massachusetts.

10.     The complex contains two putatively-separate restaurants, the "Seafood Shanty" and

        the "Quarterdeck".

11.     For the purposes of this case there is no meaningful distinction between the Sea

        Shanty and the Quarterdeck:

12.     The Quarterdeck and the Seafood Shanty are physically and financially connected.

        They operate and function as a single business.

13.    The Quarterdeck and the Seafood Shanty function as a "common enterprise" as that term is used in the FLSA.

14.    All work at both places is managed through the same timeslip system; all pay appears on the same paycheck; and the final decisions regarding all employment is made by one or all Defendants.

15.    Defendants or their agents assign employees to duties in one or the other restaurant, at the convenience of Defendants.

16.    SSRMI employs more than 60 separate individuals in any given calendar year, for calendar years 2013-2019 inclusive.

17.    SSMRI opens its restaurants in mid-May. It closes them in mid-to-late October. It has approximately a 20-week season of operations.

18.    SSRMI has annual gross sales in excess of $500,000 for calendar years 2013-2019 inclusive.

19.    SSRMI intends to engage in interstate commerce.

20.    SSRMI is engaged in interstate commerce.

**Defendants employed Plaintiffs, and promised overtime pay for all positions.**

21.    Defendants employed Plaintiffs in various positions, including such positions as security, hostess, busser, and runner.

22.    Defendant agreed to pay base wages which varied by position. Examples of 2019 base wages are as follows:

22.1.    Defendants agreed to pay $15/hour as a 2019 base wage, for security work.

22.2.    Defendants agreed to pay $14/hour as a 2019 base wage, for hostess work.

22.3.    Defendants agreed to pay $12/hour as a 2019 base wage, for work as a buser or runner

23.    Under the employment contract with Plaintiffs, Defendants agreed to pay Plaintiffs the applicable base wage for the first 40 hours worked in any given workweek.

24.    Under the employment contract with Plaintiffs, Defendants agreed to pay Plaintiffs time-and-a-half overtime pay (150% of base wage) for all hours worked beyond 40.

25.    Defendants agreed to pay 150% of base wage for all hours worked over 40, no matter what job or assignment gave rise to the hours; for example, Defendants agreed to pay 150% overtime to both tipped employees and non-tipped employees.

**Defendants required Plaintiffs to track time through a computerized timeslip system maintained and operated by Defendants.**

26.    Plaintiffs recorded their work time using a computerized timeslip system provided by Defendants.

27.    Defendants were in control of the timeslip system and the payroll system.

28.    Defendants required Plaintiffs to use the timeslip system, which was incorporated into Defendants' larger computer system.

29.    The timeslip system would accept Plaintiffs' entries according to job and employee number, and would track their time for payroll and recordkeeping purposes.

30.    Every time that Plaintiffs clocked out of a shift, the timeslip system would print a receipt.

31.    The printed receipt would show a) the receipt date; b) the time in and out for that shift; c) the hours worked that shift; d) the hours to date worked since the start of the workweek; e) overtime hours earned that shift; and f) overtime to date earned since the start of the workweek.

32.    The timeslip system also tracked individual jobs worked by Plaintiffs.

33.    When Plaintiffs worked at jobs which were coded with a different job code, the hours for each job would also be reflected on the timeslips.

34.    The slips generated by the timeslip system were accurate.

35.     The data shown on those timeslips were accurate.

36.    If plaintiffs worked at more than one pay rate in a workweek where they also worked any overtime, the timeslips would assign overtime hours to different pay rates.

37.    Defendants were in control of the assignment of overtime hours to different pay rates.

38.    This had the effect of assigning different overtime rates based on Defendants' decision about which hours (for which job) would be paid at normal rate, and which hours (for which job) would be paid at time-and-a-half rate.

**Defendants paid Plaintiffs weekly, using a printed computerized paystub.**

39.  Defendants issued weekly paystubs to Plaintiffs and paid weekly wages to Plaintiffs
     via a paycheck.

40.  Paychecks were issued one week after the work was performed. For example, the
     workweek ending on July 13, 2019 was paid via paycheck dated July 20, 2019.

41.  The paystubs matched the paycheck: The amount shown on the paystub matched the
     amount of the paycheck provided to Plaintiffs for the workweek in question.

42.  The total hours shown on the paystub reflect all hours for which Plaintiffs were paid
     for the workweek in question.

43.  Some jobs were paid at different hourly rates than other jobs. Therefore, an individual
     paystub might reflect multiple categories of wages and pay rates based on the
     position(s) worked by that employee during that workweek.

44.  When a payroll showed more than 40 hours worked in that workweek, it would
     reflect some hours (for at least one pay rate) at an "OverTime" rate. Depending on
     the circumstances, the paystub might reflect more than one job rate and/or
     "OverTime" pay rate.

**Defendants' timeslips use the hour:minute system**

45.  The timeslips used by Defendants use the hour:minute system, e.g. "65:52"

46.  In the hour:minute system, the number following the colon refers to intervals of
     1 minute, or 60 seconds.

Page 8 of 29

47.   A sample of Grigor B. Hristozov's timeslip is attached as **EXHIBIT B: Grigor B. Hristozov Timeslip for Workweek Ending July 13, 2019.**

48.   Hristozov's Exhibit B timeslip shows that Hristozov worked 67:40 total (67 hours and 40 minutes), of which 27:40 (27 hours and 40 minutes) were overtime.

**Defendants' Paystubs use the decimal-hour system**

49.   The paystubs issued by Defendants use "decimal-hours", e.g. "65.81 hours".

50.   In the decimal-hour system, the number following the decimal refers to intervals of 1/100 of an hour—an amount equal to 0.6 minutes, or 36 seconds.

51.   A sample of Grigor B. Hristozov's paystub is attached as **EXHIBIT C: Grigor B. Hristozov Paystub for Workweek Ending July 13, 2019.**

52.   Hristozov's Exhibit C paystub is in decimal-hour format, and shows that Hristozov was paid for 54.86 total hours, of which 14.86 hours were "OverTime Pay".

**Conversion from hour:minute to decimal-hours**

53.   The standard method for converting hour:minute time to decimal-hours is to divide the minutes shown by 60, and then to round the resulting number to a two-digit decimal.

54.   Grigor B. Hristozov's timeslip for the workweek ending July 13, 2019 showed 67 hours and 40 minutes of work.

55.   67 hours and 40 minutes is equivalent to 67.67 hours.

56.    It is correct to say that Hristozov's timeslip for the workweek ending July 13, 2019

shows 67.67 total hours of work.

**Defendants routinely failed to credit hours and/or deducted hours from Plaintiffs' paychecks, thereby robbing Plaintiffs of wages.**

57.    Defendants did not credit or pay Plaintiffs for all of the hours which Plaintiffs

worked.

58.    Defendants illegally deducted hours which plaintiffs had worked, from the amounts

paid to Plaintiffs.

59.    Defendants illegally docked Plaintiffs' hours.

60.    Defendants did not reduce Plaintiffs' hours consistently. On some weeks, Defendants

might remove almost 25% of Plaintiffs' hours. On other weeks, Defendants might

remove only 1/2 hour, or none at all.

**Grigor B. Hristozov example: discrepancy between hours worked and pay received**

61.    EXHIBIT B: Grigor B. Hristozov Timeslip for Workweek Ending July 13, 2019

shows that Hristozov worked 67 hours and 40 minutes; this is equal to 67.67 total

hours of work.

62.    Hristozov worked 67.67 total hours for the workweek ending July 13, 2019.

63.    Hristozov earned 27.67 hours of overtime for the workweek ending July 13, 2019.

64.    Hristozov was due 27.67 hours of time-and-a-half overtime pay for the workweek

ending July 13, 2019.

Page 10 of 29

65.   However, **EXHIBIT C: Grigor B. Hristozov Paystub for Workweek Ending July 13, 2019** shows that Hristozov was paid for only 54.86 total hours, of which 14.86 hours were "OverTime Pay".

66.   For the workweek ending July 13, 2019, Hristozov was paid for only 54.86 total hours, of which 14.86 hours were "OverTime Pay".

67.   Defendants failed to pay Hristozov for 12.81 hours of time-and-a-half overtime pay for the workweek ending July 13, 2019.

68.   The discrepancy between the July 13, 2019 timeslip (Exhibit B) and paystub (Exhibit C), and the accompanying failure to pay wages to Hristozov, are representative across all weeks which Hristozov worked for Defendants and are representative of all timeslips and paystubs issued by Defendants to all class Plaintiffs.

**Karolina M. Hristova example: discrepancy between hours worked and pay received**

69.   Karolina M. Hristova worked 69.97 total hours for the workweek ending July 27, 2019.

70.   Hristova's timeslip for that workweek is attached as **EXHIBIT D: Karolina M. Hristova Timeslip for Workweek Ending July 27, 2019.**

71.   Hristova's Exhibit D timeslip shows that she worked 69 hours and 58 minutes, equal to 69.97 total hours, of work.

72.   Hristova earned 29.97 hours of overtime for the workweek ending July 27, 2019.

Page 11 of 29

73. Hristova was due 29.97 hours of time-and-a-half overtime pay for the workweek ending July 27, 2019.

74. Hristova's paystub for that same workweek is attached as EXHIBIT E: Karolina M. Hristova Paystub for Workweek Ending July 27, 2019.

75. Hristova's Exhibit E paystub shows that she was paid for only 56.75 total hours, of which 16.75 hours were "OverTime Pay".

76. For the workweek ending July 27, 2019, Hristova was paid for only 56.75 total hours, of which 16.75 hours were "OverTime Pay".

77. Defendants failed to pay Hristova for 13.22 hours of time-and-a-half overtime pay for the workweek ending July 27, 2019.

78. The discrepancy between Hristova's July 27, 2019 timeslip and paystub and the accompanying failure to pay wages to Hristova, are representative across all weeks which Hristova worked for Defendants and are representative of all timeslips and paystubs issued by Defendants to all employees.

**Defendants failed to post the required FLSA, Wage Act, or other employee posters or notices anywhere, and failed to inform Plaintiffs of relevant employee information.**

79. Defendants' restaurants share a single employee room, which is physically located in the Seafood Shanty building.

80.  The employee room of Defendants' business does not contain any federal or state wage or employment posters other than a single poster addressing workplace accidents.

81.  The employee room does contain however, notices to employees regarding their duties as employees.

82.  No employee area or other area frequented by employees contains any federal or state wage posters.

83.  A Massachusetts Wage Act poster can be found at https://www.mass.gov/files/documents/2018/10/25/WH_Poster_Oct2018_ENG.pdf

84.  A printed copy of the Massachusetts Wage Act poster is attached as **EXHIBIT F: Required Massachusetts Wage Poster.**

85.  Exhibit F is a true and accurate copy of said Massachusetts Wage Act poster.

86.  Defendants were and are required to post said Massachusetts Wage Act poster, a substantively similar poster, or other equivalent information, at their business.

87.  Defendants did not post said Massachusetts Wage Act poster, a substantively similar poster, or other equivalent information, at their business.

88.  No employee area or other area frequented by employees contains a visible copy of said Massachusetts Wage Act poster, a substantively similar poster, or other equivalent information.

89. A Fair Labor Standards Act poster can be found at

https://www.dol.gov/whd/regs/compliance/posters/minwagebw.pdf

90. A printed copy of the Fair Labor Standards Act poster is attached as **EXHIBIT G: Required FLSA Poster.**

91. Exhibit G is a true and accurate copy of said FLSA poster.

92. Defendants were and are required to post said FLSA poster, a substantively similar poster, or other equivalent information, at their business.

93. Defendants did not post said FLSA poster, a substantively similar poster, or other equivalent information, at their business.

94. No employee area or other area frequented by employees contains a visible copy of said FLSA poster, a substantively similar poster, or other equivalent information..

95. No employee area or other area frequented by employees contains any document or poster which would notify any employee of their rights with respect to tip pooling or the classification of an employee as a tipped employee.

96. No employee area or other area frequented by employees contains any document or poster which would notify any employee of their rights with respect to a tip credit or tip deductions.

97. Defendants' Employee Handbook does not contain any information related to tip pooling or the classification of an employee as a tipped employee.

98.  Defendants' Employee Handbook does not contain any information related to a tip credit or tip deductions.

99.  Defendants did not notify Plaintiffs, orally or otherwise, regarding all of their rights under the FLSA.

100.  Defendants did not notify Plaintiffs, orally or otherwise, regarding all of their rights as tipped employees.

101.  Defendants did not notify Plaintiffs, orally or otherwise, regarding all of their rights under the Massachusetts Wage Act.

102.  As a result of Defendants' failure to notify and failure to post required notices, Plaintiffs and all class members were unaware of their rights under employee laws, including but not limited to the FLSA and the Massachusetts Wage Act.

**Defendants improperly applied a $5/hour "tip credit" and deducted $5/hour from Plaintiffs' wages.**

103.  Defendants unilaterally applied a "tip credit" to Plaintiffs' wages in certain tipped-employee positions, in which Defendants would reduce the wages paid to only $7/hour.

104.  Defendants reached this number by applying a $5/hour "tip credit" to Plaintiffs' wages, based on a theoretical amount which Plaintiffs would earn in tips, and removing that amount from Plaintiffs' wages.

105. Defendants did not obtain Plaintiffs' permission to take the "tip credit" from Plaintiffs' wages.

106. Defendants did not inform Plaintiffs of the amount of the cash wage that was to be paid to Plaintiffs by the employer.

107. Defendants did not inform Plaintiffs of the additional amount by which the wages of Plaintiffs would be increased on account of the tip credit claimed by the employer.

108. Defendants did not inform Plaintiffs that the additional amount by which the wages of Plaintiffs would be increased on account of the tip credit claimed by the employer may not exceed the value of the tips actually received by Plaintiffs.

109. Defendants did not inform Plaintiffs that all tips received by Plaintiffs must be retained by the Plaintiffs except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

110. Defendants did not inform Plaintiffs that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

111. Defendants were not entitled to take a deduction from Plaintiffs' wages for a "tip credit."

112. Defendants were not entitled to pay Plaintiffs less than minimum wage.

113. The deduction was illegal as applied to Plaintiffs' regular hours because it put Plaintiffs below minimum wage.

114. The deduction was illegal as applied to Plaintiffs' overtime hours.

**Defendants did not provide Plaintiffs with their required breaks, and obligated Plaintiffs to work without breaks.**

115.   Defendants often required Plaintiffs to work for more than 12 hours in a day.

116.   During the above shifts, Defendants failed to provide Plaintiffs with a 30-minute meal break for each 6-hour shift.

117.   Rather, Defendants gave Plaintiffs only a few minutes of break, and gave only one break (if at all) in a 12-hour shift.

118.   Defendants also restricted Plaintiffs' movements and actions during Plaintiffs' breaks, by making the breaks so short that Plaintiffs could not leave the premises.

119.   Defendants failed to obtain consent from Plaintiffs for limiting their break periods.

120.   When Plaintiffs tried to take longer breaks, or asked to take longer breaks, Defendants threatened to retaliate against Plaintiffs by assigning them unpleasant tasks ("scrub all the floors") or consequences (unpleasant shift times, bad shifts, or fewer shifts) if Plaintiffs used more than a few minutes.

121.   Despite Defendants' imposition of short meal breaks, Defendants also sought to prevent Plaintiffs from eating *during* their shift.

122.   As a result of working so many hours per day and denial of ordinary and humane meal breaks, plaintiff Grigor B. Hristozov lost almost 25 pounds over the course of his employ by Defendants. No Defendants appeared to notice or be concerned.

123. A true and accurate copy of the "Employee Meals" section of the Sea Shanty Employee Handbook is attached as EXHIBIT H: "Employee Meals" section of Sea Shanty Employee Handbook.

124. The Employee Handbook instructed Plaintiffs that "Employees must eat before or after their shift."

125. Defendants specifically instructed Plaintiffs *not* to eat during their shifts.

126. Defendants specifically instructed Plaintiffs to eat only before and after their shifts.

127. When an employee worked multiple jobs throughout a day (for example, working both as a busser and then a hostess), Defendants would require the employee to clock out, take a short unpaid break, eat a meal, and return to work at their new job.

**Examples of meal break violations: Karolina M. Hristova**

128. EXHIBIT D: Karolina M. Hristova Timeslip for Workweek Ending July 27, 2019 shows Hristova's work activity for the day of July 27, 2019.

129. On July 27, 2019, Hristova worked a 7 hour and 32 minute early shift as a busser, beginning her shift at 9:34 A.M.

130. Said 7 hour and 32 minute shift was done without a meal break.

131. On July 27, 2019, Hristova was then obliged by Defendants to stay clocked out for only 12 minutes, before starting her next shift.

132. During that 12-minute *unpaid* time on July 27, 2019, it was Hristova's sole opportunity to eat a meal, since 9:34 A.M.

Page 18 of 29

133. Because Defendants gave no meal breaks, Hristova would not have an opportunity to eat again on July 27, 2019—until 10:10 P.M., when her shift ended.

134. Under Massachusetts law, Hristova's July 27, 2019 workday should have been treated as a single workday shift, of more than 12 hours.

135. Under Massachusetts law, Hristova should have been given the opportunity to have *two* meal breaks on July 27, 2019, of at least 30 minutes each.

136. On July 27, 2019, Hristova received no meal breaks.

**Examples of meal break violations: Grigor B. Hristozov**

137. A sample of Grigor B. Hristozov's timeslip is attached as **EXHIBIT B: Grigor B. Hristozov Timeslip for Workweek Ending July 13, 2019** shows Grigor Hristozov's work activity for the workday of July 13, 2019.

138. On July 13, 2019, Grigor B. Hristozov worked a 13 hour and 14 minute shift, equal 13.23 hours.

139. During that 13.23 hour shift, Hristozov should have gotten two separate 30-minute breaks.

140. However, Hristozov was only given a single opportunity to eat—for a few short minutes—between 3:00 and 5:00 P.M. Other than that, Hristozov worked without meal breaks from 9:34 A.M. to 10:34 P.M.

## CLAIMS

141.  For all conduct of Defendants described herein, Defendants were acting willfully, knowingly, and intentionally.

142.  For all conduct of Defendants, each individual Defendant was personally aware of and responsible for the actions of all other Defendants and their agents.

143.  For all conduct of Defendants described herein, the same or substantially similar conduct applied with respect to all or most non-salaried 2019 employees of Defendants.

144.  For all conduct of Defendants described herein, the same or substantially similar conduct applied with respect to all or most non-salaried employees of Defendants for six years prior to the date of filing of this complaint.

### Count 1: Failure to pay minimum wage; Mass. Gen. Laws ch. 151 §1

145.  Plaintiffs restate paragraphs 1 through 144.

146.  Defendants paid Plaintiffs less than the then-current Massachusetts minimum wage required by Mass. Gen. Laws ch. 151 §1.

147.  Defendants did this as a result of illegally applying a "tip credit" to Plaintiffs' wages.

148.  Defendants were not entitled to apply the tip credit, or to pay Plaintiffs less than the then-current Massachusetts minimum wage.

149.  Defendants failed to pay Plaintiffs their minimum wages required by law.

150.  Plaintiffs were damaged by Defendants' conduct.

**Count 2: Failure to pay wages; Mass. Gen. Laws ch. 149 §148; 29 U.S.C. §§201-219**

151.    Plaintiffs restate paragraphs 1 through 150.

152.    Defendants failed to pay Plaintiffs for all hours worked by Plaintiffs.

153.    Defendants failed to pay Plaintiffs all wages due, thereby violating Mass. Gen. Laws ch. 149 §148.

154.    Defendants failed to pay all wages due, thereby violating the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201-219, as amended.

155.    Plaintiffs were damaged by Defendants' conduct.

**Count 3: Illegal deductions from wages; Mass. Gen. Laws ch. 149 §148**

156.    Plaintiffs restate paragraphs 1 through 155.

157.    Defendants improperly deducted $5/hour from Plaintiffs' wages without justification or permission by illegally applying a "tip credit".

158.    This deduction was illegally applied to both regular hours and overtime hours.

159.    Defendants also improperly deducted hours from Plaintiffs' wages without justification or permission.

160.    Plaintiffs have been damaged by Defendants' conduct.

**Count 4: Breach of contract.**

161.    Plaintiffs restate paragraphs 1 through 159.

162.    The Defendants contracted to pay Plaintiffs their agreed wages at the proper rate.

163.    The Defendants contracted to pay Plaintiffs for all hours worked.

164. The Defendants contracted to pay Plaintiffs their wages in accordance with all laws, statutes, and regulations.

165. The Defendants contracted to generally treat Plaintiffs and provide work conditions in accordance with all laws, statutes, and regulations.

166. Defendants breached their contract with Plaintiffs by failing to pay agreed wages at the proper rate; by failing to pay Plaintiffs for all hours worked; by failing to pay Plaintiffs in accordance with state and federal laws, states, and regulations; and by failing to generally treat Plaintiffs and provide work conditions in accordance with all laws, statutes, and regulations.

167. Plaintiffs have been damaged by Defendants' conduct.

## Count 5: Failure to provide required breaks; Mass. Gen. Laws ch. 149 §§100-101

168. Plaintiffs restate paragraphs 1 through 166.

169. Defendants failed to provide Plaintiffs with breaks required by Mass. Gen. Laws. Ch. 149 §§100-101.

170. Plaintiffs have been damaged by Defendants' conduct.

## Count 6: Retaliation; Mass. Gen. Laws ch. 149 §148A; Mass. Gen. Laws ch. 151 §19

171. Plaintiffs restate paragraphs 1 through 170.

172. When Plaintiffs tried to take longer breaks, or asked to take longer breaks, Defendants threatened to retaliate, or did retaliate, against Plaintiffs by assigning

them unpleasant tasks ("scrub all the floors") or consequences (unpleasant shift times, bad shifts, or fewer shifts) if plaintiffs used more than 10 minutes.

173. Plaintiffs have been damaged by Defendants' conduct.

**Count 7: Failure to post required wage posters; Massachusetts Wage Act and FLSA**

174. Plaintiffs restate paragraphs 1 through 172.

175. Defendants failed to post the required information or posters required by 454 Code Mass. Reg. 27.07(1).

176. Defendants failed to post the required information or posters set forth in the FLSA and associated regulations.

177. Plaintiffs have been damaged by Defendant's conduct.

## EQUITABLE TOLLING

178. The Massachusetts Wage Act, Code of Massachusetts Regulations, and the FLSA all require the employer to post various notices apprising employees of their rights.

179. Defendants failed to post the required notices under the Massachusetts Wage act and the FLSA.

180. Such notices are designed to give employees the knowledge and opportunity to bring complaints for, or otherwise resolve, violations related to their employment.

181. A failure to post the required information deprives employees of the knowledge and opportunity to bring complaints for, or otherwise resolve, violations related to their employment.

182. This failure is especially pronounced when an employer chooses to hire many non-resident non-citizens, who are not familiar with wage laws.

183. Because the Defendants failed to provide information, class Plaintiffs were unaware of their rights under the Massachusetts Wage Act and the FLSA.

184. Because the Defendants failed to provide information and inform them of their rights (as required by law), class Plaintiffs were functionally unable to bring a wage claim within the statutory time limits set forth by the Massachusetts Wage Act and the FLSA.

185. The Defendants' beach of the Massachusetts Wage Act and the FLSA was a specific and proximate cause of the class Plaintiffs' failure to bring a complaint about their wages.

186. Because any delay in filing results from the Defendants' collective misconduct, the Plaintiffs ask the court to equitably toll the statute of limitations for both the Massachusetts Wage Act and the FLSA, to match the six-year statute of limitations of the contract claims.

## CLASS CERTIFICATION ANALYSIS

187.   Plaintiffs request that the court certify the following class:

> **All persons who are or have been an hourly employee of Defendants and who have worked at Defendants' restaurants at any time in the past six years prior to the filing of the complaint.**

> Excluded from this class are the Defendants, their affiliates and any officers and directors thereof, as well as any judge presiding over this action, the judge's spouse and immediate family, and the jury in this matter.

188.   Under Mass. R. Civ. P. 23(a), a class action should be certified because "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

### NUMEROSITY; Mass. R. Civ. P. 23(a)(1)

189.   On information and belief, Defendants employ over 50 people per year on a non-salaried basis.

190.   The claims here involve a putative six-year statute of limitations for contract; a three-year statute for the Massachusetts Wage Act; and a two-year statute for the FLSA.

191.   However, the complaint seeks equitable tolling of the Wage Act and FLSA claims, to match the six-year contract period.

192. Even without equitable tolling, Defendants' violations apply to hundreds of employees under contract theory alone.

193. The class meets the numerosity requirement.

**COMMONALITY; Mass. R. Civ. P. 23(a)(2)**

194. All Plaintiffs worked for the same Defendants.

195. All Plaintiffs suffered similar injuries of nonpayment.

196. All Plaintiffs who worked tipped-employee positions were paid less than minimum wage.

197. Resolving the factual issues of timeslip versus paystub discrepancies will resolve that issue for the class.

198. Resolving the factual issue of nondisclosure of required posters and notices will resolve that issue for the class.

199. Resolving factual issues regarding Defendants' failure to offer required breaks will resolve that issue for the class.

200. This class meets the commonality requirement.

**TYPICALITY; Mass. R. Civ. P. 23(a)(3)**

201. Rule 23 (a) (3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

202. All class Plaintiffs have been underpaid, as have the named Plaintiffs.

203. All class Plaintiffs have failed to obtain required notices, as did the named Plaintiffs.

204.    All class Plaintiffs have substantially the same set of claims and would allege

substantially the same facts.

205.    The named Plaintiffs are typical.

**ADEQUACY; Mass. R. Civ. P. 23(a)(4)**

206.    The named Plaintiffs have no conflict with any of the class.

207.    The named Plaintiffs will seek full payment of all back wages, and appropriate

multiple damages for all employment violations.

208.    The counsel for Plaintiffs has considerable experience in employment law and is

qualified, experienced and able to vigorously conduct the proposed litigation.

209.    For the foregoing reasons, a class should be certified.

## REQUEST FOR RELIEF

210.    For the foregoing reasons, the Plaintiffs request that the Court:

211.    Certify the following class:

**All persons who are or have been an hourly employee of Defendants
and who have worked at Defendants' restaurants at any time in the past six
years prior to the filing of the complaint.**


Excluded from this class are the Defendants, their affiliates and any officers and

directors thereof, as well as any judge presiding over this action, the judge's spouse

and immediate family, and the jury in this matter.

Page 27 of 29

212.    Appoint Plaintiffs as class plaintiffs, and Plaintiffs' counsel as class counsel.

213.    Equitably toll the statute of limitations for all class Plaintiffs, with respect to the Massachusetts Wage Act, to six years from the date of filing of this complaint.

214.    Equitable toll the statute of limitations for all class Plaintiffs, with respect to the Fair Labor Standards Act, to six years from the date of filing of this complaint.

215.    Enter judgment on all counts in favor of Plaintiffs and all class members;

216.    Award Plaintiffs and all class members their unpaid wages under the Massachusetts Wage Act and the Fair Labor Standards Act.

217.    Award attorneys fees and triple damages for all unpaid wages which fall under the Massachusetts Wage Act.

218.    Award attorneys fees and double damages for all unpaid wages which fall under the Fair Labor Standards Act.

219.    Award Plaintiffs and all class members their attorneys fees and costs incurred in prosecuting this action;

220.    Award Plaintiffs and all class members appropriate damages or fines for other violations of Massachusetts and federal law; and

221.    Award such other relief as the court may determine.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS

Dated August 27, 2019

Plaintiffs,
Grigor B. Hristozov
Karolina M. Hristova
By their attorney

Erik Hammarlund (BBO# 664321)
Hammarlund Law Office
PO Box 2487
10 State Rd. Unit B-3
Vineyard Haven MA 02568

(508) 696-7700 phone
(508) 696-7705 fax
eh@hammmarlundlaw.com email

## LIST OF EXHIBITS ATTACHED

EXHIBIT A: SSRMI 2018 Annual Report

EXHIBIT B: Grigor B. Hristozov Timeslip for Workweek Ending July 13, 2019

EXHIBIT C: Grigor B. Hristozov Paystub for Workweek Ending July 13, 2019

EXHIBIT D: Karolina M. Hristova Timeslip for Workweek Ending July 27, 2019

EXHIBIT E: Karolina M. Hristova Paystub for Workweek Ending July 27, 2019

EXHIBIT F: Required Massachusetts Wage Poster

EXHIBIT G: Required FLSA Poster

EXHIBIT H: "Employee Meals" section of Sea Shanty Employee Handbook

# EXHIBIT A

# SSRMI 2018 Annual Report

MA SOC   Filing Number: 201973506690    Date: 2/26/2019 3:25:00 PM



## The Commonwealth of Massachusetts
## William Francis Galvin

Minimum Fee: $100.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

### Annual Report
(General Laws, Chapter 156D, Section 16.22, 950 CMR 113.57)

**Identification Number:** 043521631

**1. Exact name of the corporation:** SEAFOOD SHANTY RESTAURANT MANAGEMENT, INC.

**2. Jurisdiction of Incorporation:** State: MA  Country:

**3,4. Street address of the corporation registered office in the commonwealth and the name of the registered agent at that office:**

Name: DENISE PAGE
No. and Street: 25 LINE DR., W.
City or Town: TISBURY    State: MA    Zip:    Country: USA

**5. Street address of the corporation's principal office:**

No. and Street: 25 LINE DR.
City or Town: W. TISBURY    State: MA    Zip: 02575    Country: USA

**6. Provide the name and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its chief executive officer and chief financial officer.**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | FRANK J. PELLEGRINO | 3 THAXTER LANE<br>EDGARTOWN, MA 02539 USA |
| TREASURER | DENISE PAGE | 25 LINE DR., W.<br>TISBURY, MA USA |
| SECRETARY | FRANK J PELLEGRINO | 3 THAXTER LANE<br>EDGARTOWN, MA 02539 USA |
| CLERK | FRANK J PELLEGRINO | 3 THAXTER LANE<br>EDGARTOWN, MA 02539 USA |
| DIRECTOR | FRANK J PELLEGRINO | 3 THAXTER LANE<br>EDGARTOWN, MA 02539 USA |
| DIRECTOR | DENISE PAGE | 25 LINE DRIVE<br>WEST TISBURY, MA 02575 USA |

**7. Briefly describe the business of the corporation:**

RESTAURANT

**8. Capital stock of each class and series:**

| Class of Stock | Par Value Per Share<br>Enter 0 if no Par | Total Authorized by Articles<br>of Organization or Amendments | Total Issued<br>and Outstanding |
|---|---|---|---|

| | | Num of Shares | Total Par Value | Num of Shares |
|---|---|---|---|---|
| CNP | $0.00000 | 1,000 | $0.00 | 200 |

**9. Check here if the stock of the corporation is publicly traded:** __

**10. Report is filed for fiscal year ending:** 12/31/ 2018

**Signed by** FRANK J. PELLEGRINO , Its **PRESIDENT**
on this 26 Day of February, 2019

© 2001 - 2019 Commonwealth of Massachusetts
All Rights Reserved

# EXHIBIT B

# Grigor B. Hristozov Timeslip for Workweek Ending July 13, 2019

7

```
            Employee Clock Out
   Unit #    1              07/13/2019  ←──
                                              ┌────────────────────────────┐
   Grigor Hristozov          10:47 PM         │ This is Grigor's final timeslip │
                                              │ of the 7/13/2019 workweek.  │
```

┌──────────────────────────┐
│ At the time he clocked out, │
│ Grigor had just finished a  │
│ workday that lasted 13      │
│ hours and 14 minutes.       │
└──────────────────────────┘

```
   Job: RUNNER
   Time in:              9:34 AM
   Time out:            10:48 PM
   Hours this shift:    13:14
   Hours this week:     67:40  ←──
   Ovrtm this shift:    13:14
   Ovrtm this week:     27:40
   ***********************************
   This is verification for hours
   worked.
   Keep this for your records.
```

┌────────────────────────────┐
│ Grigor worked 67 hours and 40 │
│ minutes this week, equivalent  │
│ to 67.67 hours.                │
│                                │
│ He was only paid for 54.86     │
│ hours.                         │
└────────────────────────────┘

┌────────────────────────────┐
│ Grigor earned a total of 27    │
│ hours and 40 minutes of        │
│ overtime this week, equivalent │
│ to 27.67 overtime hours.       │
│                                │
│ He was only paid for 14.86     │
│ hours of overtime.             │
└────────────────────────────┘

40

# EXHIBIT C

# Grigor B. Hristozov Paystub for Workweek Ending July 13, 2019



| Company Name | Seafood Shanty Rest. Mgmt. Inc. | | | | | | | | | | | Processed By Restaurant Accounting Solutions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | P.O. Box 3450 Edgartown, MA 02539 | | | | | | | | | | | (508) 627-8622 |
| Federal EIN | ***** | | (W) MA EIN | | | | | | (R) EIN | | | |

| Employee Name | Grigor B. Hristozov | | | | | | | | | | c UC State | MA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Company No. | 41 | Payroll No. | 142 | Pay Freq. | Weekly | Tax Status | | Depr | Xtr/Fxd Flat | Xtr/Fxd % |
| Employee No. | 9173 | Division No. | 0 | Start Date | 07/07/2019 | Federal | Single | 0 | 7.60 | |
| SSN No. | ***** | Home Dept. No. | 13 | End Date | 07/13/2019 | (W) MA | Single | 0 | | |
| Check No. | 34880 | Net Pay | 350.52 | Check Date | 07/20/2019 | (R) | | | | |
| Sick Hours | 14.96 | Vacation Hours | | Personal Hours | | Balances | | | | |
| Memo | | | | | | | | | | |

| Dept | Pay Desc. | Rate | Hours | Curr Amt. | Pay Desc. | Hours | YTD Amt | Tax Desc. | Curr Amt | YTD Amt | Ded Desc | Curr Amt | YTD Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 0-Regular Pay | 7.0000 | 40.00 | 280.00 | 0-Regular Pay | 345.47 | 2,497.97 | Federal WH | 84.88 | 694.59 | | | |
| 13 | OverTime Pay | 13.0000 | 14.86 | 193.18 | 1-Cash Tips | | 2,296.00 | OASDI | 0.00 | 0.00 | | | |
| 13 | 1-Cash Tips | 0.0000 | | 275.00 | OverTime Pay | 102.95 | 1,338.35 | Medicare | 0.00 | 0.00 | | | |
| | | | | | | | | MA State WH | 37.78 | 309.68 | | | |

Grigor was paid $7/hour for his first 40 hours.

This paycheck was for the workweek which ended 7/13/2019

| | Employee Totals | | 54.86 | 748.18 | Total YTD: | 448.42 | 6,132.32 | | 122.66 | 1,004.07 | | 0.00 | 0.00 |

— REMOVE DOCUMENT ALONG THIS PERFORATION —

Total hours paid: 54.86 hours, of which 14.86 hours were overtime.

(Grigor's timeslip for this period shows 67.67 hours of work, of which 27.67 hours were overtime.)

# EXHIBIT D

# Karolina M. Hristova Timeslip for Workweek Ending July 27, 2019



This is Karolina's first shift. These numbers are not accurate for weekly totals.

Karolina clocked out at 5:06, having worked 7 hours and 32 minutes, and began her "meal break."

After a **twelve-minute** break, Karolina began her second shift, which would last another 4 hours and 52 minutes.

Employee Clock Out
Unit #   1                    07/27/2019

Karolina Hristova          10:09 PM

Job: BUSSER
Time in:              9:34 AM
Time out:            5:06 PM
Hours this shift:    07:32
Hours this week:     65:06
Ovrtm this shift:    07:32
Ovrtm this week:     25:06
*********************************
Job: HOST
Time in:             5:18 PM
Time out:           10:10 PM
Hours this shift:    04:52
Hours this week:     69:58
Ovrtm this shift:    04:52
Ovrtm this week:     29:58
*********************************
This is verification for hours worked.
Keep this for your records.

Karolina worked 69 hours and 58 minutes this week, equivalent to 69.97 hours.

She was only paid for 56.75 hours.

Karolina earned 29 hours and 58 minutes of overtime this week, equivalent to 29.97 overtime hours.

She was only paid for 16.75 hours of overtime.

# EXHIBIT E

# Karolina M. Hristova Paystub for Workweek Ending July 27, 2019



| Company Name | Seafood Shanty Rest. Mgmt. Inc. | | | | | | | | | | Processed By Restaurant Accounting Solutions |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | P.O. Box 3450 Edgartown, MA 02539 | | | | | | | | | | (508) 627-8622 |
| Federal EIN | ****** | | (W) MA EIN | | | | | (R) EIN | | | |

Employee Name: Karolina M. Hristova

| Company No. | 41 | Payroll No. | 145 | Pay Freq. | Weekly | | Tax Status | Single | Dept. | UCI State | MA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee No. | 2624 | Division No. | 0 | Start Date | 07/21/2019 | Federal | Single | 1 | Xtr/Exd Flat | Xtr/Exd % |
| SSN No. | ****** | Home Dept. No. | 11 | End Date | 07/27/2019 | (W) MA | Single | 1 | 7.60 | |
| Check No. | 35141 | Net Pay | 403.71 | Check Date | 08/03/2019 | (R) | | | | |
| Sick Hours | 17.32 | Vacation Hours | | Personal Hours | | Balances | | | | |
| Memos | | | | | | | | | | |

| Dept. | Pay Desc | Rate | Hours | Curr Amt | Pay Desc | Hours | YTD Amt | Tax Desc | Curr Amt | YTD Amt | Ded Desc | Curr Amt | YTD Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | OverTime Pay | 21.0000 | 3.24 | 68.04 | O-Regular Pay | 425.47 | 3,075.93 | Federal WH | 83.11 | 677.89 | | | |
| 11 | O-Regular Pay | 7.0000 | 40.00 | 280.00 | I-Cash Tips | | 2,638.90 | OASDI | 0.00 | 0.00 | | | |
| 11 | OverTime Pay | 13.0000 | 13.51 | 175.63 | OverTime Pay | 94.30 | 1,270.30 | Medicare | 0.00 | 0.00 | | | |
| 11 | I-Cash Tips | 7.0000 | | 290.55 | | | | MA: State WH | 36.85 | 305.75 | | | |
| | **Employee Totals** | | **56.75** | **814.22** | **Total YTD:** | **519.77** | **6,985.13** | | **119.96** | **983.64** | | **0.00** | **0.00** |

Karolina was paid $7/hour for her first 40 hours.

This paycheck was for the workweek which ended 7/27/2019.

— REMOVE DOCUMENT ALONG THIS PERFORATION —

Total hours paid: 56.75 hours, of which 16.75 hours were overtime.

(Karolina's timeslip for this period shows 69.97 hours of work, of which 29.97 hours were overtime.)

# EXHIBIT F

# Required Massachusetts Wage Poster

# Massachusetts Wage & Hour Laws



Office of Massachusetts
Attorney General
Maura Healey



**Fair Labor Hotline**
(617) 727-3465
TTY (617) 727-4765



www.mass.gov/ago/fairlabor

State law requires all employers to
post this notice at the workplace in a
location where it can easily be read.
M.G.L. Chapter 151, Section 16;
454 C.M.R. 27.07(1)

## Minimum Wage
M.G.L. Chapter 151, Sections 1, 2A, and 7

In Massachusetts, all workers are presumed to
be employees. The minimum wage applies to all
employees, except
- agricultural workers ($8.00 per hour is the
  minimum wage for most agricultural workers),
- members of a religious order,
- workers being trained in certain educational,
  nonprofit, or religious organizations, and
- outside salespeople.

| Effective Date | Minimum Wage | Service Rate |
|---|---|---|
| January 1, 2017 | $11.00 | $3.75 |
| January 1, 2019 | $12.00 | $4.35 |
| January 1, 2020 | $12.75 | $4.95 |
| January 1, 2021 | $13.50 | $5.55 |
| January 1, 2022 | $14.25 | $6.15 |
| January 1, 2023 | $15.00 | $6.75 |

## Tips
M.G.L. Chapter 149, Section 152A; M.G.L. Chapter 151, Section 7

The hourly "service rate" applies to workers who provide services to customers and who make more than $20 a month in tips.
The average hourly tips, plus the hourly service rate paid to the worker must add up to the minimum wage (or more).
Managers, supervisors and owners must never take any part of their employees' tips.
Tips and service charges listed on a bill must be given only to wait staff, service bartenders, or other service employees.
Tip pooling is allowed only for wait staff, service bartenders, and other service employees.

## Overtime
M.G.L. Chapter 149, Sections 1A and 1B

Generally, employees who work more than 40 hours in any week must be paid overtime. Overtime pay is at least 1.5 x the regular rate
of pay for each hour worked over 40 hours in a week.
For some employees who get paid the "service rate," the overtime rate is 1.5 x the basic minimum wage, not the service rate.
*Exception:* Under state law, some jobs and workplaces are exempt from overtime. For a complete list of overtime exemptions, visit
www.mass.gov/ago/fairlabor or call the Attorney General's Fair Labor Division at (617) 727-3465.

## Payment of Wages
M.G.L. Chapter 149, Section 148; 454 C.M.R. 27.02

The law says when, what, and how employees must be paid. An employee's pay (or wages) includes payment for all hours worked, including
tips, earned vacation pay, promised holiday pay, and earned commissions that are definitely determined, due and payable.
Hourly employees must be paid every week or every other week (bi-weekly). The deadline to pay is 6 or 7 days after the pay period ends,
depending on how many days an employee worked during one calendar week.
Employees who quit must be paid in full on the next regular payday or by the first Saturday after they quit (if there is no regular
payday). Employees who are *fired* or *laid off* must be paid in full on their last day of work.

## Paystub Information
M.G.L. Chapter 149, Section 148

All employees must get a statement, at no cost, with their pay that says the name of the employer and employee, the date of payment
(month, day, and year), the number of hours worked during the pay period, the hourly rate, and all deductions or increases made
during the pay period.

## Pay Deductions
M.G.L. Chapter 149, Section 148; 454 C.M.R. 27.05

An employer cannot deduct money from an employee's pay unless the law allows it (such as state and federal income taxes), or the
employer asked for a deduction to be made for the employee's own benefit (such as to put money aside in the employee's savings
account).
An employer cannot take money from an employee's pay for the employer's ordinary business costs (for example, supplies, materials
or tools needed for the employee's job). An employee who requires an employee to buy or rent a uniform must refund the actual costs
to the employee.
The law also puts limits on when and how much money an employer can take from an employee's pay for housing and meals the
employer gives to the employee.

## Hours Worked
454 C.M.R. 27.02

Hours worked or "working time" includes all time that an employee must be on duty at the employer's worksite or other location, and
works before or after the normal shift to complete the work.

## Meal Breaks
M.G.L. Chapter 149, Sections 100 and 101

Most employees who work more than 6 hours must get a 30-minute meal break. During their meal break, employees must be free of all
duties and free to leave the workplace. If, at the request of the employer, an employee agrees to work or stay at the workplace during
the meal break, the employee must get paid for that time.

## Payroll Records
M.G.L. Chapter 151, Section 15

Payroll records must include the employee's name, address, job/occupation, amount paid each pay period, and hours worked (each day
and week).
Employers must keep payroll records for 3 years. Employees have the right to see their own payroll records at reasonable times and
places.

## Sick Leave
M.G.L. Chapter 149, Section 148C

Most employees have the right to earn 1 hour of sick leave for every 30 hours they work, and they may earn up to 40 hours
of sick leave a year. Employees begin accruing sick leave on their first day of work. Employees must have access to their sick leave 90
days after starting work.

Eligible employees may use their sick leave if they or their child, spouse, parent, or spouse's parent is sick, injured, or has a routine
medical appointment. They may also use sick leave for themselves or their child to address the effects of domestic violence.
Unless it is an emergency, employees must notify the employer before using sick leave.
Employees who miss more than 3 days in a row may need to provide their employer a doctor's note.

### Paid Sick Leave
Employers with 11 or more employees must provide paid sick leave. Employers with fewer than 11 employees must provide sick
leave, however, it does not need to be paid.

## Employers Must Not Discriminate
M.G.L. Chapter 149, Section 105A; M.G.L. Chapter 151B, Section 4

Subject to certain limited exceptions, employers must not pay one employee less for doing the same or comparable work as another
employee of a different gender.

They must not discriminate in hiring, pay or other compensation, or other terms of employment based on a person's
- Race or color
- Religion, national origin, or ancestry
- Sex (including pregnancy)
- Military service
- Sexual orientation or gender identity or expression
- Genetic information or disability
- Age

## Small Necessities Leave
M.G.L. Chapter 149, Section 52D

In some cases, employees have the right to take up to 24 hours unpaid leave every 12 months for their:
- child's school activities,
- child's doctor or dentist appointment, or
- elderly relative's doctor or dentist appointments, or other appointments.

Employees are eligible for this leave if the employer has at least 50 employees and the employee has
- been employed for at least 12 months by the employer and
- worked at least 1,250 hours for the employer during the previous 12-month period.

## Reporting Pay
454 C.M.R. 27.04(1)

Most employees must be paid for 3 hours at no less than minimum wage if the employee is scheduled to work 3 or more hours, and
reports to work on time, and is not given the expected hours of work.

## Rights of Temporary Workers
M.G.L. Chapter 149, Section 159C

To learn about rights of temporary workers and employees hired through staffing agencies, call 617-626-6970 or go to
www.mass.gov/dols.

## Rights of Domestic Workers
M.G.L. Chapter 149, Section 190

To learn about additional rights for workers who provide housekeeping, cleaning, childcare, cooking, home management, elder care,
or similar services in a household, go to www.mass.gov/DW.

## Public Works and Public Construction Workers
M.G.L. Chapter 149, Section 26-27H

Workers who work on public construction projects and certain other public work must be paid the prevailing wage, a minimum rate
set by the Department of Labor Standards based on the type of work performed

## Domestic Violence Leave
M.G.L. Chapter 149, Section 52E

Employees who are victims, or whose family members are victims, of domestic violence, sexual assault, stalking or kidnapping have the
right to 15 days of leave for related needs, such as health care, counseling, and victims services; safe housing, care and custody of their
children; and legal help, protective orders, and going to court.
The leave can be paid or unpaid depending on the employer's policy. This law applies to employers with 50 or more employees.

## Employees Have the Right to Sue
M.G.L. Chapter 149, Section 150; M.G.L. Chapter 151, Sections 18 and 20

Employees have the right to sue their employer for most violations of wage and hour laws.
Employees may sue as an individual or they may sue their employer as a group if they have similar complaints. Employees who win
their case will receive back pay, triple damages, attorneys' fees, and court costs.
*Important!* There are strict deadlines for starting a lawsuit. For most cases, the deadline is 3 years after the violation.

## Employers Must Not Retaliate
M.G.L. Chapter 149, Section 148A; M.G.L. Chapter 151, Section 19

It is against the law for an employer to punish or discriminate against an employee for making a complaint or trying to enforce the
rights explained in this poster.
The laws explained in this poster apply to all workers, regardless of immigration status, including undocumented workers. If an
employer reports or threatens to report a worker to immigration authorities because the worker complained about a violation of
rights, the employer can be prosecuted and/or be subject to civil penalties.

## Employees Under 18 – Child Labor
M.G.L. Chapter 149, Sections 56 –105

All employers in Massachusetts must follow state and federal laws for employees who are under 18 (minors). These laws say when, where, and how long minors may work. They also say what kinds of work or tasks minors must NOT do.
Work Permits Required – Most workers under 18 must obtain a work permit. Employers must keep their minor workers' work permits on file at the worksite. To get a work permit, the minor must apply to the superintendent of the
school district where the minor lives or goes to school. To learn more about getting a work permit, contact the Department of Labor Standards at (617) 626-6975, or www.mass.gov/dols.

### Dangerous Jobs & Tasks Minors Must Not Do

| Age | Must Not |
|---|---|
| 16 & 17 | - Drive most motor vehicles or forklifts<br>- Work at a job that requires that the employee have or use a firearm<br>- Use, clean or repair certain kinds of power-driven machines | - Handle, serve, or sell alcoholic beverages<br>- Work 30 or more feet off of the ground |
| 14 & 15 | - Cook (except on electric or gas grills that do not have open flames), operate fryolators, rotisseries, NIECO broilers, or pressure cookers<br>- Operate, clean or repair power-driven food slicers, grinders, choppers, processors, cutters, and mixers | - Work in freezers or meat coolers<br>- Perform any baking activities<br>- Work in or near factories, construction sites, manufacturing plants, mechanized workplaces, garages, tunnels, or other risky workplaces |
| Under 14 | - Minors under 14 cannot work in Massachusetts in most cases. | |

These are just some examples of tasks prohibited under state and federal law. For a complete list of prohibited jobs for
minors, contact the Attorney General's Fair Labor Division (617) 727-3465 • www.mass.gov/ago/youthemployment. Or contact the
U.S. Department of Labor, (617) 624-6700 • www.youthrules.gov

### Time & Schedule Restrictions for Minors

| Age | Must not work | At any times |
|---|---|---|
| 16 & 17 | At night, from 10 p.m. to 6 a.m. (or past 10:15 if the employee stops serving customers at 10 p.m.)<br>*Exception:* On non-school nights, may work until 11:30 p.m. or until midnight, if working at a restaurant or racetrack. | - More than 9 hours per day<br>- More than 48 hours per week<br>- More than 6 days per week |
| 14 & 15 | At night, from 7 p.m. to 7 a.m. *Exception:* In summer (July 1 – Labor Day), may work until 9 p.m.<br>**During the School Year:**<br>- During school hours<br>- More than 3 hours on any school day<br>- More than 18 hours during any week<br>- More than 8 hours on any weekend or holiday | **When school is not in session:**<br>- More than 8 hours on any day<br>- More than 40 hours per week<br>- More than 6 days per week |

*Exception:* For school-approved career or experience-building jobs, students may be allowed to work during the school day, up to 23
hours a week.
**Adult Supervision Required After 8 p.m. –** After 8 p.m., all minors must be directly supervised by an adult who
is located in the workplace and is reasonably accessible. *Exception:* Adult supervision is not required for minors
working at a kiosk or stand in a common area of an enclosed shopping mall that has security from 8 p.m. until the
mall closes.

---

(?) **Contact the Attorney General's Fair Labor Division:** (617) 727-3465 – www.mass.gov/ago/fairlabor

Rev 10/2018

# EXHIBIT G

# Required FLSA Poster

# EMPLOYEE RIGHTS
## UNDER THE FAIR LABOR STANDARDS ACT

### FEDERAL MINIMUM WAGE
# $7.25 PER HOUR
### BEGINNING JULY 24, 2009

**The law requires employers to display this poster where employees can readily see it.**

**OVERTIME PAY**  At least 1½ times the regular rate of pay for all hours worked over 40 in a workweek.

**CHILD LABOR**  An employee must be at least 16 years old to work in most non-farm jobs and at least 18 to work in non-farm jobs declared hazardous by the Secretary of Labor. Youths 14 and 15 years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs with certain work hours restrictions. Different rules apply in agricultural employment.

**TIP CREDIT**  Employers of "tipped employees" who meet certain conditions may claim a partial wage credit based on tips received by their employees. Employers must pay tipped employees a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference.

**NURSING MOTHERS**  The FLSA requires employers to provide reasonable break time for a nursing mother employee who is subject to the FLSA's overtime requirements in order for the employee to express breast milk for her nursing child for one year after the child's birth each time such employee has a need to express breast milk. Employers are also required to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by the employee to express breast milk.

**ENFORCEMENT**  The Department has authority to recover back wages and an equal amount in liquidated damages in instances of minimum wage, overtime, and other violations. The Department may litigate and/or recommend criminal prosecution. Employers may be assessed civil money penalties for each willful or repeated violation of the minimum wage or overtime pay provisions of the law. Civil money penalties may also be assessed for violations of the FLSA's child labor provisions. Heightened civil money penalties may be assessed for each child labor violation that results in the death or serious injury of any minor employee, and such assessments may be doubled when the violations are determined to be willful or repeated. The law also prohibits retaliating against or discharging workers who file a complaint or participate in any proceeding under the FLSA.

**ADDITIONAL INFORMATION**
- Certain occupations and establishments are exempt from the minimum wage, and/or overtime pay provisions.
- Special provisions apply to workers in American Samoa, the Commonwealth of the Northern Mariana Islands, and the Commonwealth of Puerto Rico.
- Some state laws provide greater employee protections; employers must comply with both.
- Some employers incorrectly classify workers as "independent contractors" when they are actually employees under the FLSA. It is important to know the difference between the two because employees (unless exempt) are entitled to the FLSA's minimum wage and overtime

# EXHIBIT H

# "Employee Meals" section of Sea Shanty Employee Handbook

## SEAFOOD SHANTY RESTAURANT MANAGEMENT INC.

- Sexual harassment or discrimination
- Habitual absenteeism or tardiness
- Clocking another employee in/out
- Taking food or drink without permission
- Using any restaurant supplies other than for restaurant purposes

### EMPLOYEE MEALS

Employees must eat before or after their shift. You are not to bring any food or drink on to the floor, nor are you allowed to eat in the kitchen. The "Employee Menu" is available from 3-5 P.M. for employees to order food, items not available on the "Employee Menu" are available at a 20% discount from regular menu pricing.

- **Lunch Shift** – Do not bring outside food in to the restaurant, eat your breakfast before arriving to work. If you are working a single lunch shift you may order off the employee menu after your shift has ended
- **Dinner Shift** – Do not bring outside food in to the restaurant. If you want to eat before your shift you may order off the employee menu and eat at the downstairs bar as long as there is space, **DO NOT** sit at the bar if it is mostly full with customers
- **Double Shift** – You may order one (1) item off the employee menu at no charge between 3-5 P.M. Before leaving the floor you must make sure your section/responsibilities are being watched by another employee. Food may only be eaten within the employee room, **DO NOT** bring food on to the floor
- Only soft drinks, coffee & tea are complimentary. Red Bull can be purchased from the bar if time allows, **DO NOT** try and purchase Red Bull from the bar if it is busy, their priority is serving the guests. Anyone found taking Red Bull or giving other employees Red Bull without payment will be subject to disciplinary action